IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TENDYNE HOLDINGS, INC. SECURITYHOLDERS' REPRESENTATIVE COMMITTEE, ON BEHALF OF THE TENDYNE HOLDINGS, INC. SECURITYHOLDERS,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT VASCULAR, INC. and ABBOTT LABORATORIES,<br><br>Defendants. | Civil Action No. 18-1070-CFC |

## **MEMORANDUM ORDER**

Plaintiff Tendyne Holdings, Inc. Securityholders' Representative Committee (the Committee) filed this breach of contract action on behalf of the former securityholders of Tendyne Holdings, Inc. (Tendyne) against Defendants Abbott Vascular, Inc. and Abbott Laboratories (collectively, Abbott). In Count I of the Amended Complaint, the Committee alleges that Abbott breached a Merger Agreement and the covenant of good faith and fair dealing by failing to exert "Commercially Reasonable Efforts" in commercializing a medical device called

the Tendyne Valve, which Tendyne had begun to develop before the merger. D.I. 25 ¶ 213. In Count II, the Committee alleges that Abbott breached the Merger Agreement by failing to satisfy "its obligation to provide to [the Committee] the type of Earn-out Reports mandated by section 1.13(b)(ii) of the Merger Agreement." *Id.* ¶ 221. Abbott has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the Amended Complaint for failure to state a claim upon which relief can be granted. D.I. 29.

The two counts in the Amended Complaint replicate the two counts of the original complaint except that the amended counts add considerable detail to the facts alleged in support of the contract claims. I dismissed the original complaint by a previous Memorandum Order. D.I. 23. I set forth in that Memorandum Order the applicable legal standards for Rule 12(b)(6) and Delaware contract law, and will not repeat those well-established standards here. Nor will I restate the relevant provisions in the Merger Agreement that were set forth in the earlier Memorandum Order. Instead, as I write for the parties, I will incorporate by reference the earlier Memorandum Order and recite here only the relevant facts not set forth in that Memorandum Order.

The Amended Complaint cures the deficiencies in the original complaint that led me to grant Abbott's original motion to dismiss. Unlike the original complaint, which "contain[ed] only conclusory assertions that Abbott breached the

Agreement by failing to use Commercially Reasonable Efforts," *id.* at 5, the Amended Complaint alleges specific facts that explain how Abbott's failure to exert Commercially Reasonable Efforts "unduly delayed the development of the Tendyne Valve and prevented the device from achieving the First Milestone in a timely manner," D.I. 25 ¶ 109. The Amended Complaint alleges, for example, that "[l]ike every other medical device manufacturer, Abbott usually considers utilizing multiple Notified Bodies [i.e. regulatory agencies] to obtain CE Marks [i.e., marks that confirm conformity with health, safety, and environmental protection standards for products sold within the European Economic Area] for its products." *Id.* ¶ 116. But, as alleged in the Amended Complaint, after the Merger, Abbott "initially elected to pursue discussions regarding the path for obtaining a CE Mark for the Tendyne Valve with only a single Notified Body, the UK-based British Standards Institution ('BSI')," and "did not adequately investigate whether another Notified Body would offer the Tendyne Valve a quicker, more efficient, more cost-effective path to a CE Mark." *Id.* ¶¶ 110–11.

The Amended Complaint further alleges that "Abbott aggravated its decision to work exclusively with BSI . . . by dramatically, and unnecessarily, expanding the scope of the Tendyne Valve Clinical Trial following the Merger." *Id.* ¶ 121. As the Amended Complaint explains, to expedite clinical trials, "[n]either Abbott nor its competitors typically enlist more patients in a clinical trial than a Notified

3

Body requires to issue a CE Mark." *Id.* ¶ 131. But in this case, even though "prior to the Merger, Tendyne and BSI had agreed that Tendyne could obtain a CE Mark for the Tendyne Valve by showing successful results in a controlled study involving 40–60 patients," *id.* ¶ 123, Abbott "unilaterally decided following the Merger to dramatically expand the scope of the Tendyne Valve Clinical Trial to 110 patients," *id.* ¶ 129.

Also unlike the original complaint, the Amended Complaint alleges facts to support its claim that Abbott breached § 1.13(b)(ii) of the Agreement by failing to provide to the Committee sufficient reports of the Tendyne Valve's progress. Section 1.13(b)(ii) required Abbott to provide the Committee with periodic reports that "describ[e] in reasonable detail [Abbott's] progress towards achievement of each Earn-out Event." D.I. 32 at 17. The Amended Complaint specifically alleges (with numerous examples) how Abbott's reports failed to provide reasonable details of its progress (and lack of progress) towards achievement of the Earn-out Events. *See, e.g.*, D.I. 25 ¶ 184 (alleging that the reports provided the Committee "with no meaningful explanation regarding . . . the overall status of Abbott's efforts to commercialize the Tendyne Valve[,] . . . the device's progress towards regulatory approval[,] . . . the reasons for Abbott's significant expansion of the size of the Clinical Trial after the Merger[,] . . . the reasons for Abbott's repeated failure to meet its stated patient enrollment goals for the Clinical Study[,] . . . [and]

4

the reasons for Abbott's repeated revision of the Tendyne Valve's quality management system [which the Amended Complaint alleges contributed to Abbott's undue delay and failure to achieve the Earn-out event]"); *id.* ¶¶ 188–89 (alleging that the reports "provide[d] only a single lump-sum total for forecasted spending versus actual spending without any further explanation" and "provided no data concerning whether: there had been cost overruns in particular areas of the development process; Abbott had under-funded particular planned development steps; or funding restrictions were impacting the conformity assessment process").

Despite the detailed nature of these allegations, Abbott argues that they are insufficient to state a claim for three reasons. First, Abbott states that "[a] review of the reports," which Abbott filed with the Court and asks me to examine, "shows that they do provide reasonable detail." D.I. 30 at 21. Putting aside the question of whether it is appropriate for me to consider the reports in the context of a Rule 12(b)(6) motion, it is clearly inappropriate for me to dismiss a claim under Rule 12(b)(6) based on my determination about the reasonableness of the level of detail in a report. "Reasonableness is a question of fact to be determined by the finder of fact." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1206 (Del. 1993) (citation omitted).

Second, Abbott argues that a "full-disclosure provision" in § 1.13(b)(ii) "provides that if Abbott's written reports are believed to be inadequate—as [the

5

Committee] alleges ... —then [the Committee] will 'request in writing a meeting with representatives of [Abbott] to discuss such report, [and Abbott] shall make available in person or by phone for such a meeting appropriate representatives.'" D.I. 30 at 21 (quoting § 1.13(b)(ii) of Merger Agreement). Abbott argues that because the Amended Complaint "never alleges that [the Committee] requested a meeting and was denied, or that any meetings conducted were unsatisfactory," it cannot allege a breach-of-contract claim based on a deficient report. *Id.* This argument fails, however, because, although § 1.13 required Abbott to make available a representative *if* the Committee asked for a meeting to discuss a report, nothing in the Merger Agreement required the Committee to request such a meeting or made such a request a condition precedent to filing a law suit based on Abbott's alleged failure to provide sufficient reports.

Third, Abbot argues that the Amended Complaint "never alleges any harm from the breach." *Id.* But the Amended Complaint alleges that Abbott's obligation to provide reasonably detailed reports "ha[d] great significance" because the reports were intended "to facilitate [the Committee's] ability to monitor Abbott's adherence to its Commercially Reasonable Efforts obligation and to enforce that duty if Abbott breached the Merger Agreement." D.I. 25 ¶ 16. Thus, it can be plausibly inferred from the Amended Complaint that the Committee was damaged by Abbott's breach of its reporting obligations because the deficient

6

reports limited the Committee's ability to monitor and enforce Abbott's adherence to its obligation to exert Commercially Reasonable Efforts to achieve the Earn-out Events.

Finally, Abbott devotes the bulk of its briefing to arguing that the Amended Complaint should be dismissed with prejudice because it alleges inconsistent theories. In Abbott's words, the Amended Complaint

> is at war with itself. It alleges first that the [transcatheter mitral valve replacement] market was so lucrative that Abbott spent a quarter of a billion dollars to acquire Tendyne and the Tendyne Valve. . . .
>
> [The Committee] then alleges that, having won the prize at great cost, Abbott deliberately threw it all away [and] decided to forego a huge share of a multi-billion-dollar market—all to avoid paying a comparatively modest [earn-out] milestone of $50 million [to the Committee].

D.I. 30 at 6–7. Even assuming Abbott is correct that the Amended Complaint sets forth inconsistent theories, that inconsistency would not warrant dismissal. Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

7

"This Rule permits inconsistency in both legal and factual allegations." *Indep. Enterprises Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997).

**WHEREFORE**, on this Twentieth day of February in 2020, **IT IS HEREBY ORDERED** that Defendants Abbott Vascular, Inc. and Abbott Laboratories' Motion to Dismiss (D.I. 29) is **DENIED**.

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE